UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BEATRICE FIZER,** | 2:19-CV-11193-TGB-MKM |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **CITY OF WARREN, et al,** | |
| Defendants. | |

In March of 2017, Beatrice Fizer was pulled over for speeding and changing lanes without a turn signal. Officers Brian Herrin and Dale VanHorn of the Warren Police Department forcibly removed Ms. Fizer from her vehicle and arrested her. Now Ms. Fizer claims that Defendants violated her constitutional rights, granted by the Fourth and Fourteenth Amendments, by employing excessive force during her arrest. Defendants moved for summary judgment, arguing that the force in question was not excessive, and that the Defendant Officers are entitled to qualified immunity.

For reasons that follow, Defendants' Motion for Summary Judgment will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Ms. Fizer was driving on Eight Mile Road near Hoover Road at approximately 11:00 p.m. on March 25, 2017 when she was pulled over by Warren Police Officers Herrin and VanHorn. Eight Mile Road marks the border between Detroit to the south and Warren to the north. The Officers reported that Ms. Fizer was speeding and changed lanes without a turn signal. Warren Police Department Case Report, ECF No. 33-4, PageID.410. According to Officer VanHorn, the officers did not have any idea of how fast she was traveling (VanHorn Dep., ECF No. 35-2, PageID.561) but they estimated it was roughly 5-15 miles over the 50-mph speed limit (Warren Police Department Case Report, PageID.410). Officer VanHorn explained that Ms. Fizer's "vehicle hit the yellow dividing line a couple of times, and then Officer Herrin effected a traffic stop." VanHorn Dep., PageID.561. Ms. Fizer "admits that she may have been driving more than the speed limit," and "that at one point she changed lanes" but does not specify whether she used her turn signal. Response, ECF No. 35, PageID.527.

The following description of events is based primarily on video footage captured by a camera located on the front of the officers' patrol vehicle.[1] After Ms. Fizer pulls over, Officer VanHorn approaches the

---

[1] The video recording captures the stop from the vantage point of the dashboard camera, which encompasses a view of the rear of Ms. Fizer's vehicle. It is possible to see both officers approaching both sides of the vehicle, but not to see the inside her vehicle. Police Car Videos, ECF No.

passenger side of her car and Officer Herrin approaches the driver side. The officers are standing at the respective car windows at 11:05:16 p.m. Officer Herrin shines his flashlight into the driver side window, knocks on the window, and then knocks again (at 11:05:24 p.m. and 11:05:33 p.m., respectively). On the other side of the vehicle, Officer VanHorn opens the front passenger-side door and appears to lean into the vehicle. At 11:05:40 p.m., Officer Herrin can be heard saying "ma'am, unroll the window," knocking for the third time as he says it. Officer Herrin proceeds to open the driver side door. Plaintiff can be heard saying something to the officers, but the video audio makes it hard to decipher her words. Officer Herrin says to Ms. Fizer, "come on out for me, ma'am," followed by, "step on out for me, ma'am" at 11:06:03 p.m. and 11:06:06 p.m. Right after Officer Herrin speaks, Plaintiff can be plainly heard responding, "I am." Officer Herrin then immediately attempts to pull Ms. Fizer from the vehicle, they struggle briefly, Officer VanHorn comes over to assist, and they swiftly take her to the ground.

Officer Herrin states that when he grabbed Ms. Fizer he attempted to use the "straight arm bar technique", the goal of which is "to take a hold of the subject's wrist and put pressure on the back triceps area of

---

33-2. Additional sources include: a Warren Police Department Case Report made by Defendants Herrin and VanHorn (ECF No. 33-4), the deposition testimonies of Plaintiff Fizer (ECF No. 35-4), Defendant Herrin (ECF No. 35-3), and Defendant VanHorn (ECF No. 35-2), and Plaintiff Fizer's Response to Defendants' motion (ECF No. 35).

the same arm and force them to the ground." Herrin Dep., ECF No. 35-3, PageID.593. However, he was unsuccessful in executing this technique. *Id*. Officer Herrin says that Plaintiff took hold of something in the car to resist him and pull herself back in. *Id*. Ms. Fizer says that she still had her seatbelt on which is why Officer Herrin could not easily remove her from the car. Fizer Dep., ECF No. 35-4, PageID.610. At 11:06:08 p.m., Officer VanHorn can be seen withdrawing his head and shoulders from the passenger side of the car and hurrying to the driver's side, where he and Officer Herrin quickly force Plaintiff to the ground and handcuff her. At this point, one of the officers can be heard saying, "just for a simple speeding, really?"

As a result of the incident, Ms. Fizer sustained a laceration inside her lip, bruises to her arm and chest, soreness in her shoulder, and significant injuries to her left hand, which required surgery. ECF No. 35-4, PageID.610. Ms. Fizer for still suffers from nerve damage in the hand, and has not regained its full function. *Id*. She alleges that the incident took a significant mental and emotional toll on her, as she now has a fear of leaving the house, fear of interacting with police officers, and that the event has significantly changed her lifestyle. *Id*.

On April 25, 2019, Ms. Fizer filed a complaint against the Defendant Officers and the City of Warren, alleging the following counts: (I) violation of the Fourth Amendment under 42 U.S.C. § 1983 for unreasonable search and seizure; (II) violation of Fourth and Fourteenth

Amendments under 42 U.S.C. § 1983 for use of excessive force; (III) constitutional violations by the City of Warren; (IV) ethnic intimidation in violation of MCL 750.147(b); (V) intentional infliction of emotional distress by the Defendant Officers; and (VI) gross negligence by the Defendant Officers. ECF No. 1.

This case was originally assigned to the Honorable Marianne Battani. Parties stipulated to the dismissal of the City of Warren as a defendant on September 10, 2019. ECF No. 18, PageID.300. Judge Battani allowed the remaining Defendants, Officers Herrin and VanHorn, to file a Motion for Summary Judgment prior to discovery. ECF No. 11. After a hearing on November 26, 2019, Judge Battani made a ruling on the record to grant in part and deny in part.[2] ECF No. 22, PageID.325. Judge Battani also noted that Defendants could file a second dispositive motion pertaining to Count II after the close of fact discovery if they wished.

Count II (§ 1983 excessive force claim) is the only claim that remained after the City of Warren was dismissed from the case and summary judgment was granted for Defendant Officers on all other

---

[2] The relevant text-only order from November 26, 2019 states that: "Plaintiff may go forward with the 42 U.S.C. § 1983 claim of excessive force asserted in Count II of her complaint, but summary judgment is awarded in favor of Defendants Herrin and VanHorn on the remaining federal and state-law claims asserted against them in Plaintiff's complaint."

claims. The parties moved forward with discovery on this claim, and on August 14, 2020 the case was reassigned to this Court. Defendants filed the current Motion for Summary Judgment on December 18, 2020. ECF No. 33. The Court held a hearing on July 21, 2021 to evaluate Plaintiff's remaining claim, that Defendants' use of force violated her constitutional rights under the Fourth and Fourteenth Amendments.

## II.    **STANDARD OF REVIEW**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party

opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. According to qualified immunity doctrine, the non-moving party also has the burden of proving that the right allegedly violated was clearly established at the time of the incident in question. *See Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009). The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

As a procedural note, although this is the second motion for summary judgment in this case, Judge Battani's previous findings are not necessarily the law of the case because new discovery was conducted between the original motion (ECF No. 11) and this motion (ECF No. 33). *See* Second motion for summary judgment, 27A Fed. Proc., L. Ed. § 62:678.

### III.   ANALYSIS

The Court will address the issues raised by Plaintiff's claims in three parts: first, whether the excessive force claim should be analyzed under the Fourth or Fourteenth Amendment; second, whether summary judgment should be granted to Defendants on the excessive force claim; and third, whether the Defendant Officers are entitled to qualified immunity.

### A.    Analysis of Plaintiff's excessive force claim

Analyzing an excessive force claim brought under § 1983 requires the Court to identify the "specific constitutional right" that was allegedly violated as a result of the use of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Ms. Fizer asserts that she can bring her § 1983 claim under either the Fourth or Fourteenth Amendment.

If the constitutional right that was allegedly violated is explicitly covered by the specific text within an amendment, then the corresponding standard of analysis should be applied. *United States v. Lanier*, 520 U.S. 259 (1997). *See also Graham,* 490 U.S. at 395. Fourth Amendment rights protect free citizens during an arrest, seizure, or investigatory stop. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (citing *Whitley v. Albers,* 475 U.S. 312, 318-322 (1986)). A seizure occurs when a police officer restrains a free person, making it clear that they are not free to leave. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). To qualify as a seizure, an incident does not need to result in a criminal charge or a trip

to the police station. *Id.* at 88. The Supreme Court maintains that an incident can be classified as a seizure simply because it involved "the mere grasping or application of physical force with lawful authority." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *California v. Hodari D.,* 499 U.S. at 625 (1991)). However, for Fourth Amendment rights to apply in the case of a seizure, the physical contact between a police officer and a free citizen requires that the officer used force "*with intent to restrain*. Accidental force will not qualify." *Id*. at 998 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).

If a plaintiff's rights are not covered by either the Fourth or Eighth Amendment (which protects prisoners from excessive force), "the Due Process Clause of the Fourteenth Amendment protects the individual against physical abuse by officials." *Id.* at 865 (quoting *Darrah v. City of Oak Park,* 255 F.3d 301, 305-06 (6th Cir. 2001)). Ms. Fizer claims that the Fourteenth Amendment could apply to her as a pre-trial detainee denied due process. ECF No. 1, PageID.7. But the Sixth Circuit has found that "the Fourth Amendment protects pre-trial detainees arrested without a warrant through the completion of their probable-cause hearings . . . ." *Aldini*, 609 F.3d at 860. The force in question was used during an investigatory stop, seizure, and arrest, meaning that Ms. Fizer's claim should be analyzed under the "reasonableness" standard of the Fourth Amendment rather than the "substantive due process" standard of the Fourteenth Amendment. *Graham,* 490 U.S. at 394, 395. Although the

precise moment when Ms. Fizer no longer felt free to leave may not be clear, anyone would know that she is being detained once a policeman lays hands on her and puts her on the ground by force. Because Ms. Fizer's Fourth Amendment rights were clearly triggered when the force in question was applied,[3] it is not necessary for the Court to pinpoint the instant when her Fourth Amendment rights attached earlier during the traffic stop—they were clearly at issue when she was pulled out of the vehicle and the alleged excessive force ocurred. The Court will therefore analyze Plaintiff's excessive force claim under the Fourth Amendment, and summary judgment is granted to Defendants on the Fourteenth Amendment claim.

### B.   Reasonableness of the use of force

An officer's use of force is considered excessive, when the degree of force is objectively unreasonable under all the circumstances. If the force was objectively reasonable, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim.

To answer the question of reasonableness, the Court asks what a reasonable officer would do when confronted with the facts of the case.

---

[3] Officer Herrin stated that his intention when he touched her and grabbed her by the arms to pull her out of the vehicle was to restrain and arrest her. Herrin Dep., 38:21 – 39:1. Given his intention, and the definitions of seizure and arrest, there is no question that Ms. Fizer's Fourth Amendment rights were in play as soon as Officer Herrin made physical contact with her. The force in question that ultimately resulted in Ms. Fizer's injuries began with that physical contact.

*Graham,* 490 U.S. at 397. The reasonableness standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citation omitted). Analysis must consider the "totality of the circumstances." *Id.* at 396 (quoting *Tennessee v. Garner,* 471 U.S., at 8-9). The Court should ask what a reasonable officer would do in the situation rather than view the facts with the benefit of hindsight. *Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir. 2002).

The Sixth Circuit has instructed that the factors introduced in *Graham* should be used in determining the reasonableness of an officer's conduct when a plaintiff alleges excessive force. *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006); *see also Graham,* 490 U.S. at 397. The *Sigley* analysis asks: (1) what was the severity of the crime in question, (2) was the party presenting an immediate threat to the officers or other members of the public, and (3) did the party actively resist arrest or attempt to flee? *Id.* The Court will consider each factor in turn.

### i.   Factor one: seriousness of the crime

If an arrestee is suspected of committing a serious crime, especially a violent one, officers may have more reason to believe the situation is unsafe and act accordingly. Officers Herrin and VanHorn pulled over Ms. Fizer because she was allegedly speeding an estimated 5-15 miles over the 50-mph speed limit (they do not recall exactly the rate of her speed)

and changed lanes without a turn signal. These are minor civil infractions of the type that normally result in traffic citations; they are not serious crimes. Moreover, the officers ran Ms. Fizer's license plate prior to the stop and found that the vehicle was not associated with any criminal activity. Officer Herrin admits that no crime had been committed up until he tried to remove her from the car, at which point she allegedly resisted. Herrin Dep., PageID.593.

Defendants suggest it is relevant to this factor that Ms. Fizer was charged with possession of marijuana during the traffic stop, but the Court disagrees. Officer VanHorn first noticed the marijuana when he was leaning into Plaintiff's front seat passenger door. VanHorn Dep. at 32:23-25. But Officer Herrin, who initiated the use of force, was not aware of the marijuana until Ms. Fizer was already in handcuffs. Herrin Dep. at 37:3-5. The marijuana possession was therefore not a factor in the assessment of whether to use force in arresting Plaintiff. Nor does either Defendant Officer assert that they suspected Plaintiff was driving under the influence when they effectuated the traffic stop. Given these facts, the marijuana is irrelevant to the Court's analysis of the severity of the crime and its role in determining whether force was reasonable: based on the Officers' testimony it could not have played a role in Officer Herrin's decision to use force on Ms. Fizer. Officer VanHorn testified that he saw the marijuana just before Officer Herrin grabbed hold of Ms. Fizer to pull her out of the car. There is no evidence in the record that Officer

VanHorn's decision to assist Officer Herrin in using force on Ms. Fizer was motivated by the marijuana possession. VanHorn Dep. at 38:13-18.

The seriousness of the offense factor here does not weigh in favor of a finding that that a reasonable officer would have believed that force was necessary. Taken together, the relative non-severity of Ms. Fizer's speeding, minor traffic violation, and possession of marijuana do not support Defendants' argument that it was necessary to physically force her out of her vehicle onto the ground in order to arrest her.

### ii.  Factor two: immediate threat to safety

The second factor concerns any immediate threat posed by the suspect to law enforcement or to others. Since deference is given to officers and the fact that they must make split-second decisions, an officer's use of force is more likely to be viewed as reasonable if it was motivated by a genuine or at least genuinely-perceived safety threat.

For example, the force necessary to restrain a suspect is generally found to be reasonable when officers believe the suspect is reaching for a weapon. *See, e.g.*, *Brown v. City of Grand Rapids, Michigan,* No. 16-2433, 2017 WL 4712064 (6th Cir. June 16, 2017) (holding that force used to remove plaintiff from car, twist his arm behind his back, and conduct a pat-down search was necessary because the suspect was believed to be armed). The force necessary to physically remove a suspect from a vehicle is also considered reasonable where the suspect poses a clear risk to the public. *See, e.g.*, *Smith v. Ball State Univ.,* 295 F.3d 763, 766-67 (7th Cir.

2002) (holding that when suspect drove onto a sidewalk and was unresponsive, use of force needed to pull him from car and handcuff him was reasonable, despite the eventual discovery that the suspect was experiencing diabetic shock and was not dangerous; at the time officers and onlookers believed he was driving while intoxicated and posed a threat to public safety). Force used against a non-violent, non-threatening suspect, however, is more likely to be seen as unnecessary and therefore unreasonable. *See, e.g.*, *Carpenter v. Bowling,* 276 F. App'x 423, 427 (6th Cir. 2008) (holding that it was unreasonable for officers to body slam and knee-strike a suspect, even though she was yelling during a heated altercation, because she did not pose a serious threat).

The facts here are distinguishable from *Smith* because the minor traffic violation that led to the interaction between Plaintiff and Defendants did not present an immediate threat to the safety of the officers or the public. Defendants suggest through their expert report that because Ms. Fizer was fidgeting with her phone and purse, her actions could have led the officers to believe that she was looking for a weapon, justifying the decision to remove her from the car.[4] In his

---

[4] Defendants at oral argument also contended that the Officers may have feared for their safety because the interaction took place on a moderately busy road. Such a "fear for safety" is not relevant to the question of whether force is reasonable in extracting a driver from a vehicle. The issue is whether the individual presented a threat, not whether the volume of traffic did. Moreover, it is not at all clear how extracting the

deposition, Officer Herrin said Ms. Fizer was "kind of fumbling with her purse, just making indirect movements into it looking for stuff . . . ." Herrin Dep., PageID.593. He stated that if a suspect is reaching into closed compartments during a traffic stop, it can be a reason to remove them from the vehicle since it could indicate that they intend to produce a weapon. *Id.* Officer VanHorn had a slightly different recollection, stating that Ms. Fizer was looking at her phone and throughout the traffic stop. VanHorn Dep., PageID.561. However, Defendants do not assert that at any point they believed Ms. Fizer to be armed, nor do they claim to have feared for their safety. Additionally, given that the officers did not believe she was going to produce a weapon, her case is distinguishable from *Brown*. At oral argument, Defendants agreed that Ms. Fizer did not pose an identifiable threat: she did not have a firearm or other weapon, nor did she take a swing at, or try to fight the officers.

According to Ms. Fizer, she got her phone out to record the incident and was utilizing it to do just that.[5] The standard for summary judgment requires that inferences are drawn in the Plaintiff's favor. Given the

---

driver from the vehicle on the side of the car facing oncoming traffic would reduce the dangers presented by approaching vehicles.

[5] Ms. Fizer also claims that Defendant VanHorn had pointed his gun at her while he had the passenger side door open. ECF No. 35, PageID.542. Defendant VanHorn denies this and says that his gun was never removed from the holster. ECF No. 33, PageID.385. Whether true or not, this allegation is irrelevant to whether the use of force in arresting Ms. Fizer was reasonable because it played no role in her arrest.

circumstances outlined above and viewing facts in the light most favorable to Plaintiff, a jury could find that Ms. Fizer would not have posed any immediate threat to safety from the perspective of a reasonable officer. As such, this factor provides minimal support to the Defendants' claim that the force used was reasonable and necessary.

### iii. Factor three: whether the suspect is actively resisting arrest or attempting flee

Whether Ms. Fizer was actively resisting, passively resisting, non-compliant, or genuinely intending to comply is the third factor for consideration—and is the central question on which this case turns. As the following analysis will show, there are genuine issues of material fact remaining on this point, making summary judgment inappropriate.

The Sixth Circuit distinguishes between active and passive resistance. *See Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015). "The former [active resistance] can be characterized by physical force, a show of force, or verbal hostility coupled with failure to comply with police orders. . . . The latter [passive resistance] is generally shown by the lack of physical resistance or verbal antagonism." *Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017) (internal citations omitted). Active resistance requires not only a refusal to comply with orders but also "some outward manifestation" that suggests intentional disobedience or blatant resistance. *Bennett v. Young*, No. 3:16-CV-169-DJH-DW, 2018 WL 1575828, at *4 (W.D. Ky. Mar. 30, 2018)

16

(quoting *Kent v. Oakland Cnty.,* 810 F.3d 384, 389 (6th Cir. 2016)). Importantly, ". . . noncompliance alone does not indicate active resistance; there must be something more." *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) (holding that even though the plaintiff was noncompliant, viewing facts in light most favorable to him suggested that he did not engage in active resistance since he did not physically resist and was not verbally hostile).

If Ms. Fizer was actively resisting, officers would be permitted to use the amount of force necessary to restrain her. *See, e.g., Hagans v. Franklin Cnty. Sheriff's Off.,* 695 F.3d 505, 509 (6th Cir. 2012) (holding that it is not a constitutional violation to use force in the form of a taser to subdue a suspect who is actively resisting and refuses handcuffs). However, if a jury were to find that Plaintiff intended to comply, it could find that the force used to remove her from the car was excessive.

Similarly, where the suspect has stopped (or never started) resisting, use of force against the suspect is often found to be excessive. *Roberts v. Manigold,* 240 F.App'x 675, 676 (6th Cir. 2007) (holding that when suspect has stopped resisting and is complying with officers, force is excessive if it is clearly more than what is necessary to restrain a suspect)*; see also Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007) (finding that tasing a non-resisting, non-violent suspect was unreasonable and therefore an excessive use of force). In *Solomon v. Auburn Hills Police Dep't*, police officers fractured the plaintiff's elbow

while arresting her in a movie theater for a minor civil infraction. 389 F.3d 167, 175 (6th Cir. 2004). The plaintiff was charged with resisting arrest and assault on a police officer because she resisted their efforts to remove her from a theater and initially refused to accompany them outside of the theater. The force used was found to be excessive because it was clearly unnecessary to restrain and arrest the plaintiff and led to serious injuries, despite the fact that the environment was not especially tense or risky. *Id*.

Defendants argue that Ms. Fizer was actively resisting and that the force they used was necessary to remove her from the car. In response, Plaintiff states that she was intending to comply with the officers' orders to step out of the vehicle but was locked into her seatbelt, and that is the reason that Officer Herrin struggled to remove her.

Both parties agree that Ms. Fizer never attempted to flee or evade the officers. It is also undisputed that the video footage shows Ms. Fizer saying, "I am," in response to the second time Officer Herrin asks her to get out of the vehicle. Immediately after Ms. Fizer is heard saying this, Officer Herrin begins to physically remove her. This was not a situation where the officers waited so long that they "had no choice" but to pull Ms. Fizer out—only fifty-one seconds passed between the Defendant Officers reaching Ms. Fizer's car and Officer Herrin forcefully removing her. Under similar circumstances, the Ninth Circuit has held that "failing to exit a vehicle is not active resistance" and therefore the force used there

was unjustified. *Coles v. Eagle*, 704 F.3d 624, 626 (9th Cir. 2012) (approximately four minutes between beginning of stop and plaintiff being pulled out of the car by officers).

Of course, the facts viewable in the video footage include not only Ms. Fizer's "failing to exit" the vehicle, but also her appearing to pull away from the officer once he lays hands on her. Ms. Fizer attempts to explain this both by saying that her seatbelt prevented her from coming out of the car quickly and that she was experiencing some fear. Fizer Dep., ECF No. 35-4 at 53:16-2 ("This was at the time these cops was killing black people. Yes, I was afraid for my life at that time.").

Traffic stops can be uncomfortable interactions for the average citizen, and here Ms. Fizer testified that she had particular fears because she was a Black woman being pulled over by two white police officers and she was aware that encounters between the police and Black citizens can be fraught and sometimes dangerous.[6] Viewing this evidence in the light most favorable to Ms. Fizer, her claim of fear could be a reason that a jury might accept as explaining her immediate reaction to being grabbed. Some initial recoil could be viewed as an understandable response for Ms. Fizer when an officer tried to pull her out of her car, particularly after

---

[6] Her fear has been the subject of some legal scholarship. *See, e.g.*, Paul Butler, *The System Is Working the Way It Is Supposed to: The Limits of Criminal Justice Reform*, 104 GEO. L.J. 1419, 1425-27 (2016); Liyah Kaprice Brown, *Officer or Overseer?: Why Police Desegregation Fails As an Adequate Solution to Racist, Oppressive, and Violent Policing in Black Communities*, 29 N.Y.U. REV. L. & SOC. CHANGE 757, 760 (2005).

she had just expressed an intention to exit the vehicle voluntarily. Such a reaction does not necessarily imply resistance, much less active resistance as the Sixth Circuit defines it.

Defendants claim, citing to their expert report, that from the beginning of their interaction with Ms. Fizer, "[she] immediately and continually exhibited non-compliant, suspicious behavior towards the officers by ignoring their repeated verbal requests, hand signals and verbal commands . . . ." ECF No. 33, PageID.393. But as the Court noted during oral argument, an expert opinion is just that—an opinion—and therefore it cannot resolve a genuine issue of material fact on which summary judgment depends. The officers do not say in their police report that Ms. Fizer was combative, just that she was not responding to their commands.

Defendants also argue that the fact Ms. Fizer pled to a charge of attempting to resist supports their case. She says, "they were asking me to do something, and I didn't obey by the rules." ECF No.11-11, PageID.209. She also said, at her sentencing, "I apologize for not abiding by the police officer." *Id*. The fact that she made such statements and pled guilty to these charges, however, does not preclude her ability to bring an excessive force claim. *Schrieber v. Moe,* 596 F.3d 323 (6th Cir. 2010).

To summarize, the fact that Ms. Fizer can be heard agreeing to come out of the car voluntarily cuts against Defendants' theory that she was resisting and combative. This crucial difference in the Parties' stories

constitutes a genuine issue of material fact. In *Meirthew v. Amore*, the Sixth Circuit affirmed a denial of summary judgment when "the level and form of resistance is disputed and cannot be deciphered clearly from the video." *Meirthew v. Amore*, 417 F. App'x 494, 495 (6th Cir. 2011). Given that video footage here does not provide a clear answer to the question of whether Ms. Fizer's response to being grabbed amounted to active resistance, summary judgment is denied on the question of whether the force used against Ms. Fizer was excessive.

## C.  Qualified immunity

Defendants argue that regardless of whether the force used was in violation of Ms. Fizer's rights, the Officers are entitled to qualified immunity for their conduct because those rights were not clearly established and a reasonable officer would not have understood that his conduct constituted a violation. If the Court finds the officers are entitled to qualified immunity, summary judgment on the excessive force claim must be granted in Defendants' favor regardless of any issues of fact related to the force used. Alternatively, if Defendants are not clearly entitled to qualified immunity, summary judgment must be denied.

Here, there is a genuine issue of material fact as to whether Ms. Fizer actively resisted. This also creates an issue of fact as to whether the use of force violated her constitutional rights. If a jury were to conclude that Plaintiff did not actively resist, then her right not to be subjected to excessive force was clearly established and the use of such force is a

constitutional violation. But in the absence of such a determination, there is a question of fact as to whether the officers are entitled to qualified immunity.

### i. A question of fact regarding Plaintiff's resistance precludes qualified immunity

Qualified immunity analysis involves two prongs. Courts must determine whether (1) a government official's use of force violated a plaintiff's constitutional right and (2) whether that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223; 129 S. Ct. 808 (2009). We have already said that whether Ms. Fizer's constitutional rights were violated depends largely on whether she resisted. The next prong asks whether the constitutional right that was allegedly violated was established at the time of the incident. "Government officials are entitled to qualified immunity, despite the existence of a constitutional violation, if such violation was not 'clearly established' at the time of the incident." *Meirthew*, 417 F. App'x at 498-99 (citing *Anderson v. Creighton,* 483 U.S. 635, 639-40). In other words, at the time of Plaintiff's arrest, did the officers have reason to know that the level of force they used was excessive under existing law? Were they effectively on notice based on past cases and precedent? "A constitutional violation is clearly established when "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640.

The Sixth Circuit has established that an arrestee who poses no safety risk to the officers has a right "to be free from gratuitous violence during arrest." *Baker v. City of Hamilton*, 471 F.3d 601, 608 (6th Cir. 2006) (quoting *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006)).[7] It is also clearly established under the law of this circuit that even if a suspect has engaged in passive resistance, it is still "unreasonable to use significant force on a restrained suspect." *Meirthew*, 417 F. App'x at 499 (citing *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007)). In *McCaig v. Raber,* the Sixth Circuit affirmed the district court's denial of qualified immunity "because it was clearly established that the use of force on a non-resistant or passively-resistant individual may constitute excessive force, and because a reasonable jury could find that McCaig posed little, or no threat based on the facts alleged." *McCaig v. Raber*, 515 F. App'x 551, 554 (6th Cir. 2013). *See also Eldridge*, 533 F. App'x at 535 (holding that a clearly established right exists "to be free from the use of physical force when [an individual] is not resisting police efforts to apprehend him"). *Id.* at 535.

Therefore, both elements of qualified immunity—whether Ms. Fizer's Fourth Amendment rights were violated by Defendant Officers during her arrest, and whether those rights were clearly established at

---

[7] Gratuitous is defined as "not called for by the circumstances: not necessary, appropriate, or justified: unwarranted." *Gratuitous*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com /dictionary/gratuitous (last visited Aug. 2, 2021).

the time of the incident—hinge on the existence or non-existence of a factual predicate: whether she was resisting and to what extent. Since there is a genuine dispute of material fact on this issue, the Court cannot grant summary judgment on the basis of the qualified immunity defense.

### ii.   *Individualized analysis of each officer's conduct*

Qualified immunity analysis requires that the Court address defendants separately when multiple individuals are involved in an incident. Cases in this district and circuit have recognized that liability can be different between officers who are directly responsible for the use of force, officers who might be held liable for their indirect involvement, and officers who might not be held liable at all. Examples of officers who fall into the latter two categories include those who arrive late to the scene, *Jones v. City of Elyria, Ohio*, 947 F.3d 905, 917-18 (6th Cir. 2020); supervising officers (both present and not present during an incident) *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (collecting cases); officers who observe an incident and fall into the bystander category, *Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 267 (6th Cir. 2018); and officers who are clearly less responsible for the constitutional violation, *Lustig v. Mondeau*, 211 F. App'x 364, 370 (6th Cir. 2006) (denying qualified immunity to an officer who repeatedly twisted plaintiff's arm during an arrest, noting that excessive force claim against other officer who merely held her arm had been dropped).

For an officer to be held liable for use of excessive force, a plaintiff must show that the officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Cole v. City of Dearborn*, 448 F. App'x 571, 576 (6th Cir. 2011) (citing *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997)). Officers can be held liable for failing to prevent excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Smoak,* 460 F.3d at 784 (citing *Turner,* 119 F.3d at 429).

By contrast, the actions of an officer who arrives late to the scene and assists a fellow officer in using force on a suspect may be considered objectively reasonable even if the first officer's actions are found to be excessive. This is because the late-arriving officer is operating with limited information and is responding to the cues from the first officer. *Jones*, 947 F.3d at 917-18 (holding that an officer who arrived late and did not witness "events leading up to the altercation . . . could have fairly believed [the suspect] posed a threat to [her fellow officers,]" and it was therefore reasonable for her to help "secure the scene" by holding the suspect's feet while the other officers restrained him). In the Sixth Circuit, "nonsupervisory officer[s] who [were] not present at the scene or did not actively participate in a constitutional deprivation" are highly

unlikely to be "held liable for the failure to prevent the constitutional violation from occurring." *Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006).

Considering the wide spectrum of possible levels of involvement of an officer in any particular incident, a scholar has pointed out that in § 1983 claims, an officer may be liable "only insofar as the officer 'subjects or causes to be subjected' a person to a deprivation of rights—that is to say, insofar as she participates in a violation of the constitution or federal law." Michael Avery et al., *Police Misconduct: Law and Litigation* § 4:2 (2020). However, an officer may still be held liable for excessive force "even where she is not immediately involved in inflicting the harm or plays only a partial role." *Id*. This treatise goes on to explain that "if a plaintiff can establish that officers were present and each was participating in some way in the deprivation of rights, courts have held that it is immaterial which officer committed which acts." *Id. See also Fazica v. Jordan,* 926 F.3d 283, 289 (6th Cir. 2019) ("personal involvement in . . . the violation of Plaintiff's constitutional rights does not, however, necessarily mean that each Defendant officer directly placed hands on her. There are several ways that a defendant officer may violate a pretrial detainee's constitutional rights.").

Here, video evidence establishes that Officer VanHorn did not initiate the use of force. But he was present throughout the stop, was looking directly into the vehicle as the Plaintiff and Officer Herrin were

interacting, and moved immediately to the driver-side of the vehicle to assist Herrin in applying force to take Ms. Fizer to the ground. Under these facts, a reasonable juror could find Officer VanHorn was involved in a use of excessive force. The actions of Officers Herrin and VanHorn are distinguishable: Officer Herrin initiated the use of force and Officer VanHorn came to assist him. However, both were active participants in the employing the force in question: they both played a role in forcefully removing Ms. Fizer from her car and pushing her to the ground.

Relevant precedent instructs courts to distinguish between officers when there is no question that one is clearly not responsible for the use of force, was not present, did not have the same contextual information, or did not have reason to know force was being used. *See, e.g., Jones,* 947 F.3d at 917-18; *Peatross*, 818 F.3d at 242; *Alexander*, 733 F. App'x at 267. None of those scenarios, however, apply to the current case. Whether Ms. Fizer was actively resisting will largely determine whether the use of force was excessive. The officers could be treated differently if the jury were to conclude Ms. Fizer was not resisting at the time Officer Herrin grabbed her (which would mean such force was excessive) but that she then began resisting as he pulled her from the car. If Plaintiff was actively resisting by the time Officer VanHorn began using force, a jury could find that his use of force was not excessive and did not violate Plaintiff's constitutional rights.

To grant summary judgment, the Court must find that no genuine issue of material fact exists on any relevant issue. Although the record is clear that the Officers' roles differed, factual questions still prevent the Court from being able to conclude that Officer VanHorn was not involved in the allegedly unlawful use of force. Summary judgment on excessive force is denied as to both Officers and the qualified immunity defense is not available.

## CONCLUSION

For all the reasons set out above, Defendants' Motion for Summary Judgment (ECF No. 33) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, summary judgment is **GRANTED** as to any claims under the Fourteenth Amendment, **DENIED** as to claims of excessive force under the Fourth Amendment, and **DENIED** as to the question of whether the Defendant Officers are entitled to qualified immunity.

**SO ORDERED**, this 25th day of August, 2021.


BY THE COURT:


s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge